# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| *versus* | : | CRIMINAL NO. 16-104-LMA-EWD |
| | : | |
| BRODERICK C. LANDRY | : | |

## PLEA AGREEMENT

The United States Attorney's Office for the Middle District of Louisiana ("the United States") and Broderick C. Landry ("the defendant") hereby enter into the following plea agreement pursuant to Fed. R. Crim. P. 11(c).

## A.   THE DEFENDANT'S OBLIGATIONS

### 1.   Guilty Plea

The defendant agrees to enter a plea of guilty to Count Two of an Indictment charging him with trafficking in embezzled pre-retail medical products in violation of 18 U.S.C. §§ 670(a)(3), 670(b)(1), and 670(c)(2).

### 2.   Financial Information

The defendant agrees to fully and truthfully complete the financial statement provided to him by the United States and to return the financial statement to the United States within ten days of this agreement being filed with the Court.  Further, the defendant agrees to provide the United States with any information or documentation in his possession regarding his financial affairs and to submit to a debtor's examination upon request.  Any financial information provided by the defendant may be used by the United States to collect any

financial obligations imposed in this prosecution and may be considered by the Court in imposing sentence.

**B.     UNITED STATES' OBLIGATIONS**

      **1.     Non-prosecution of Charges**

The United States agrees that, if the Court accepts the defendant's guilty plea, it will move to dismiss the remaining counts of the Indictment after sentencing as to this defendant, and it will not prosecute the defendant for any offense related to the offenses charged in the Indictment.

      **2.     Motion for Third Point for Acceptance of Responsibility**

The United States acknowledges that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. The United States therefore agrees that, if the Court finds that the defendant qualifies for a two-level decrease in offense level for acceptance of responsibility under USSG § 3E1.1(a) and, prior to the operation of USSG § 3E1.1(a), the defendant's offense level is 16 or greater, the United States will move the Court pursuant to USSG § 3E1.1(b) to decrease the defendant's offense level by one additional level.  The United States reserves the right to object to a decrease in offense level for acceptance of responsibility based on information received by the United States after the effective date of this agreement, including information that the

defendant failed to timely submit the financial statement required by Section A(2) of this agreement.

## C.   SENTENCING

### 1.   Maximum Statutory Penalties

The maximum possible penalty on Count Two is a term of imprisonment of 20 years, a fine of up to $250,000, and a term of supervised release of three years.  In addition, the defendant is subject to a civil penalty in an amount not more than the greater of three times the amount of the economic loss attributable to the violation, or $1,000,000.

In addition to the above, the Court must impose a special assessment of $100 which is due at the time of sentencing.  The Court may also order restitution.

### 2.   Supervised Release

Supervised release is a period following release from imprisonment during which the defendant's conduct is monitored by the Court and the United States Probation Office and during which the defendant must comply with certain conditions.  Supervised release is imposed in addition to a sentence of imprisonment, and a violation of the conditions of supervised release can subject the defendant to imprisonment over and above any period of imprisonment initially ordered by the Court for a term of up to two years, without credit for any time already served on the term of supervised release.

### 3.   Sentencing Guidelines

The Court will determine in its sole discretion what the defendant's sentence will be. While the Court must consider the United States Sentencing Guidelines in imposing sentence,

the Sentencing Guidelines are not binding on the Court. The Court could impose any sentence up to the maximum possible penalty as set out above despite any lesser or greater sentencing range provided for by the Sentencing Guidelines.

      **4.**    **No Agreement Regarding Sentencing**

Except as set forth in this agreement and the supplement to the plea agreement, the United States makes no promises, representations, or agreements regarding sentencing. In particular, the United States reserves the right to present any evidence and information, and to make any argument, to the Court and the United States Probation Office regarding sentencing.

      **5.**    **Forfeiture**

The defendant agrees to forfeit any property constituting, or derived from, proceeds he obtained directly, or indirectly, as a result of the offense charged in Count Two of the Indictment. The defendant understands that forfeiture of his property will not be treated as satisfaction of any fine, restitution, cost of imprisonment, or other penalty which may be imposed upon him as part of his sentence. The defendant further understands that, separate and apart from his sentence in this case, the United States may also institute civil or administrative forfeiture proceedings of any property, real or personal, which is subject to forfeiture. The defendant agrees to waive his interest in the property identified in the Notice of Forfeiture in the Indictment in any such civil or administrative forfeiture proceeding.

The defendant agrees to fully and truthfully disclose the existence, nature, and location of all assets and to fully and completely assist the United States in the recovery and forfeiture of all forfeitable assets, including taking all steps as requested by the United States to pass

clear title to forfeitable assets to the United States. The defendant agrees to hold the United States, its agents, and its employees harmless from any claims whatsoever in connection with the seizure or forfeiture of property pursuant to the Court's forfeiture orders.

The defendant hereby waives the following: (1) all statutory and constitutional defenses to the forfeiture, including any claim that the forfeiture constitutes an excessive fine or punishment; (2) any failure by the Court to ensure at sentencing that the defendant is aware of the forfeiture or to incorporate the forfeiture in the judgment as required by Fed. R. Crim. P. 32.2(b)(4)(B); and (3) any failure by the Court to inform the defendant of, and determine that the defendant understands, the applicable forfeiture prior to accepting the defendant's plea.

## D.    **FACTUAL BASIS**

The United States and the defendant stipulate to the following facts:

Between in or about June of 2013 and in or about September of 2013, within the Middle District of Louisiana and elsewhere, Broderick C. Landry, the defendant herein, using the means and facilities of interstate commerce, did knowingly possess, transport, and traffic in pre-retail medical products, that is, prescription drugs including Reyataz, Ziagen, Prezista, Lexiva, Norvir, Epzicom, Sustiva, Complera, Atripla, and Truvada, having a value of $5,000 or more, knowing the same to have been embezzled, stolen, by fraud and deception obtained, and unlawfully taken, carried away, and concealed, in violation of Title 18, United States Code, Section 670(a)(1), while employed by, and as agent of, an organization in the supply chain for the pre-retail medical products, that is, Doc Your Dose Pharmacy.

Beginning in or about August, 2013, the defendant was employed at a licensed retail pharmacy located in the Middle District of Louisiana named Doc Your Dose Pharmacy ("DYD"). DYD was an organization in the supply chain for pre-retail medical products. The defendant performed various duties, including delivery driver, for Alvin Watts, III ("Watts"), one of the owners of DYD. Troy Taylor was also a delivery driver for Watts. The defendant did not have an ownership interest in DYD.

Defendants Troy Weaver and Francis "Frank" Debrah were employees of the Washington District of Columbia Department of Health Pharmacy Warehouse ("DOH Warehouse"), located in Washington, D.C. The DOH Warehouse received, stored, and distributed prescription drugs intended for low-income citizens in the District of Columbia. Such drugs had not yet been made available for retail purchase by a consumer and were therefore "pre-retail medical products." As a result of their employment, they had access to pre-retail medical products including HIV medication.

In or around late 2012 or early 2013, Weaver and Debrah devised a scheme to sell pre-retail HIV medication they had fraudulently embezzled from the DOH Warehouse for personal profit. Debrah knew Individual A, who could help put Weaver and Debrah in touch with pharmacists who could purchase and resell the embezzled drugs.

Individual A put Debrah in contact with Watts. Thereafter, Watts and Debrah spoke by telephone to negotiate the sale of the embezzled drugs. After at least one conversation, Debrah directed Watts to call Weaver to further arrange the details of the scheme. Watts thereafter directed Taylor to negotiate the specifics of each transaction, acting as an agent for Watts. To execute the scheme, the defendants negotiated at least four such transactions and Taylor subsequently traveled to Washington, D.C. to purchase the embezzled HIV medication from Weaver. The defendant personally traveled to Washington, D.C. with Taylor on three occasions for purposes of trafficking in embezzled pre-retail medical products.

On or about June 20, 2013, Watts gave the defendant at least $10,000 and purchased a plane ticket for the defendant for the purpose of purchasing stolen and embezzled pre-retail HIV prescription drugs on behalf of Watts. The defendant then boarded a flight in Louisiana and traveled to Baltimore, Maryland. Shortly thereafter, the defendant and Taylor purchased a quantity of embezzled pre-retail medical products from Weaver at a hotel in Washington, D.C. for at least $10,000.

Using the means and facilities of interstate commerce, the defendant and Taylor drove from Washington, D.C. to the Middle District of Louisiana by car where they delivered the stolen medication to Watts, knowing that Watts intended to distribute and sell the stolen medication.

On or about September 11, 2013, Watts wired approximately $6,500 to the defendant's bank account. As the defendant knew, such money was wired to the defendant for the purpose of purchasing stolen and embezzled HIV

prescription drugs on behalf of Watts. On or about the same day, Watts caused Taylor to rent a car from Enterprise Rent-A-Car in the Middle District of Louisiana, which vehicle the defendant and Taylor used to travel from Louisiana to Washington, D.C. for the purpose of purchasing stolen and embezzled HIV prescription drugs.

On or about September 12, 2013, the defendant and Taylor met with Weaver in a McDonald's parking lot in Washington, D.C., where the defendant and Taylor purchased a quantity of stolen HIV prescription drugs from Weaver for approximately $10,000 in cash.

The defendant and Taylor attempted to transport the stolen and embezzled HIV prescription drugs from Washington, D.C. to the Middle District of Louisiana using the means of interstate commerce at the direction of Watts, who intended to re-sell the drugs for profit. While in transit on September 12, 2013, at approximately 4:15 PM, the defendant and Taylor were stopped for a traffic violation in Bradley County, Tennessee by officers from the state 10th Judicial District Drug Task Force. The defendant and Taylor were transporting FDA-approved HIV prescription drugs having a value of at least $5,000, which had been embezzled, in the trunk of their rental vehicle.

Following the traffic stop, the defendant and Taylor were arrested and interviewed by agents from the 10th Judicial District Drug Task Force. During his interview, the defendant stated that he worked for Watts as a delivery driver at a pharmacy located in the Middle District of Louisiana. The defendant stated that he, along with Taylor, traveled from Louisiana to Washington, D.C. to purchase medication on behalf of Watts. The defendant stated that he knew there was medication in the vehicle and that he knew that he and Taylor had purchased the medication from Weaver, for cash.

The defendant admits that, to the best of his knowledge and belief, the stipulated statement of facts is true and correct in all respects. The United States and the defendant agree that, had this matter gone to trial, the United States could have proved such facts. The United States and the defendant further agree that such facts are sufficient to support conviction of the offense to which the defendant has agreed to plead guilty. The defendant understands that, by the terms of USSG § 6B1.4, the Court is not limited by the stipulated facts for purposes of

sentencing.  Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation and any other relevant information.

## E.     BREACH AND ITS CONSEQUENCES

### 1.     Conduct Constituting Breach

Any of the following actions by the defendant constitutes a material breach of this agreement:

   a.   failing to plead guilty to Count Two of the Indictment at re-arraignment;

   b.   representing, directly or through counsel, to the United States or the Court that he will not plead guilty to Count Two of the Indictment;

   c.   moving to withdraw his guilty plea;

   d.   filing an appeal or instituting other post-conviction proceedings not authorized in Section F(2);

   e.   disputing or denying guilt of the offense to which the defendant has agreed to plead guilty or denying or disputing any fact contained in the stipulated factual basis;

   f.   refusing to provide information or testimony;

   g.   disclosing, without authority, his cooperation, the existence of any federal investigation in which he cooperates, or any information learned as a result of his cooperation;

   h.   providing false, misleading, or incomplete information or testimony, including financial information and testimony provided pursuant to Section A(2), to the United States; or

   i.   violating the terms of this agreement in any other manner.

**2.      Consequences of Breach**

In the event of a breach by the defendant, the United States is relieved of its obligations under the agreement and the supplement to the plea agreement.  In particular, the United States may prosecute the defendant for any criminal offense.  In addition, any statements and information provided by the defendant pursuant to this agreement (or the supplement to the plea agreement) or otherwise, and any information and evidence derived therefrom, may be used against the defendant in this or any other prosecution or proceeding without limitation. Such statements and information include, but are not limited to, the plea agreement itself (including the factual basis contained in Section D), the supplement to the plea agreement, statements made to law enforcement agents or prosecutors, testimony before a grand jury or other tribunal, statements made pursuant to a proffer agreement, statements made in the course of any proceedings under Rule 11, Fed. R. Crim. P. (including the defendant's entry of the guilty plea), and statements made in the course of plea discussions.  The defendant expressly and voluntarily waives the protection afforded by Fed. R. Evid. 410 as to any statements made by him personally (but not as to statements made by his counsel).  The defendant is not entitled to withdraw his guilty plea.

**3.      Procedure for Establishing Breach**

The United States will provide written notice to the defendant or his attorney if it intends to be relieved of its obligations under the agreement as a result of a breach by the defendant.  After providing such notice, the United States may institute or proceed with any charges against the defendant prior to any judicial determination regarding breach.  However,

the United States will obtain a judicial determination regarding breach prior to using statements and information provided by the defendant or any act of producing documents or items by the defendant pursuant to this agreement or the supplement to the plea agreement, or any evidence or information derived therefrom, in its case-in-chief in a criminal trial or in sentencing the defendant in this case. The standard of proof in any proceeding to determine whether the plea agreement has been breached is preponderance of the evidence. To prove a breach, the United States may use (1) any and all statements of the defendant, (2) any and all statements of his counsel to the Court (including the United States Probation Office), and (3) any representation by defense counsel to the United States that the defendant will not plead guilty.

## F.   WAIVERS BY THE DEFENDANT

### 1.   Waiver of Trial Rights

By pleading guilty, the defendant waives the right to plead not guilty or to persist in a not guilty plea and waives the right to a jury trial. At a trial, the defendant would have the trial rights to be represented by counsel, to confront and examine adverse witnesses, to be protected against compelled self-incrimination, to testify and present evidence, to compel the attendance of witnesses, and to have the jury instructed that the defendant is presumed innocent and the burden is on the United States to prove the defendant's guilt beyond a reasonable doubt. By waiving his right to a trial and pleading guilty, the defendant is waiving these trial rights.

### 2.   Waiver of Appeal and Collateral Remedies

Except as otherwise provided in this section, the defendant hereby expressly waives the right to appeal his conviction and sentence, including any appeal right conferred by 28 U.S.C.

§ 1291 and 18 U.S.C. § 3742, and to challenge the conviction and sentence in any post-conviction proceeding, including a proceeding under 28 U.S.C. § 2241, 28 U.S.C. § 2255, or 18 U.S.C. § 3582(c)(2). This waiver applies to any challenge on appeal or in any post-conviction proceeding to any aspect of the defendant's sentence, including imprisonment, fine, special assessment, restitution, forfeiture or the length and conditions of supervised release or probation. The defendant, however, reserves the right to appeal the following: (a) any sentence which is in excess of the statutory maximum; (b) any sentence which is an upward departure pursuant to the Sentencing Guidelines; and (c) any non-Guidelines sentence or "variance" which is above the guidelines range calculated by the Court. Notwithstanding this waiver of appeal and collateral remedies, the defendant may bring any claim of ineffectiveness of counsel.

### 3.    Waiver of Statute of Limitations

The defendant hereby waives all defenses based on the applicable statutes of limitation as to the offense charged in the Indictment and all offenses that the United States has agreed not to prosecute, as long as such offenses are not time-barred on the effective date of this agreement. The defendant likewise waives any common law, equitable, or constitutional claim of pre-indictment delay as to such offenses, as long as such offenses are not time-barred on the effective date of this agreement. The waivers contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

### 4. Waiver of Speedy Trial Rights

The defendant hereby waives any common law, equitable, or constitutional claim regarding post-indictment delay as to the offense charged in the Indictment. The waiver contained in this paragraph will expire one year after the date of any of the following: (1) a judicial finding that defendant has breached the plea agreement; (2) the withdrawal of any plea entered pursuant to this plea agreement; or (3) the vacating of any conviction resulting from a guilty plea pursuant to this plea agreement.

### G. EFFECT OF AGREEMENT

#### 1. Effective Date

This agreement is not binding on any party until signed by the defendant, defendant's counsel, and an attorney for the United States. Once signed by the defendant, his counsel, and an attorney for the United States, the agreement is binding on the defendant and the United States.

#### 2. Effect on Other Agreements

This agreement incorporates the supplement to the plea agreement which will be filed under seal with the Court. In this district, the Court requires that a sealed supplement be filed with every plea agreement regardless of whether the defendant is cooperating. The supplement either states that the defendant is not cooperating or provides the terms of the defendant's agreement to cooperate. This plea agreement, along with the aforementioned supplement to the plea agreement, supersedes any prior agreements, promises, or understandings between the parties, written or oral, including any proffer agreement.

### 3. Effect on Other Authorities

The agreement does not bind any federal, state, or local prosecuting authority other than the United States Attorney's Office for the Middle District of Louisiana.

### 4. Effect of Rejection by Court

Pursuant to Fed. R. Crim. P. 11, the Court may accept or reject this plea agreement. If the Court rejects the plea agreement, the plea agreement and the supplement to the plea agreement are no longer binding on the parties and are not binding on the Court. If the Court rejects the plea agreement, the defendant will be given the opportunity to withdraw his plea and such withdrawal will not constitute a breach of the agreement. If the defendant does not withdraw his plea following rejection of the plea agreement, the disposition of the case may be less favorable to the defendant than contemplated by the plea agreement.

## H. REPRESENTATIONS AND SIGNATURES

### 1. By The Defendant

I, Broderick C. Landry, have read this plea agreement and have discussed it with my attorney. I fully understand the agreement and enter into it knowingly, voluntarily, and without reservation. I have not been threatened, intimidated, pressured, or coerced in any manner. I am not under the influence of any substance or circumstance that could impede my ability to understand the agreement and its consequences.

I affirm that absolutely no promises, agreements, understandings, or conditions have been made, agreed to, or imposed by the United States in connection with my decision to plead guilty except those set forth in this agreement and the supplement to the plea agreement.

I acknowledge that no promises or assurances have been made to me by anyone as to what my sentence will be.  I understand that representations by my attorney (or anyone else) regarding application of the Sentencing Guidelines and/or my possible sentence are merely estimates and are not binding on the Court.

I have read the Indictment and discussed it with my attorney.  I fully understand the nature of the charge, including the elements.

I have accepted this plea agreement and agreed to plead guilty because I am in fact guilty of the offense charged in Count Two of the Indictment.

I am satisfied with the legal services provided by my attorney and have no objection to the legal representation I have received.

DATE: 4 – 10 – 18

Broderick C. Landry
Defendant

**2.     By Defense Counsel**

I have read the Indictment and this plea agreement and have discussed both with my client, Broderick C. Landry, who is the defendant in this matter.  I am satisfied that the defendant understands the agreement and the charge against him, including the elements. I am also satisfied that the defendant is entering into the agreement knowingly and voluntarily.  The agreement, together with the supplement to the plea agreement, accurately and completely sets forth the entire agreement between the defendant and the United States.

Pride J. Doran
Counsel for Defendant

DATE: 4/10/18

**3.     By the United States**

We accept and agree to this plea agreement on behalf of the United States.  The agreement accurately and completely sets forth the entire agreement between the defendant and the United States.

Brandon J. Fremin
United States Attorney
Middle District of Louisiana

DATE: April 9, 2018

Peter J. Smyczek
Assistant United States Attorney
Middle District of Louisiana

DATE: 4/9/2018